**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

RECLAIM THE RECORDS and BROOKE
SCHREIER GANZ,

                       Plaintiffs,

           v.

UNITED STATES DEPARTMENT OF
VETERANS AFFAIRS, including its
Components, the Office of General Counsel,
the Veterans Benefits Administration,
and the Veterans Health Administration,

                    Defendant.

18 Civ. 8449 (PAE)

## DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

GEOFFREY S. BERMAN
United States Attorney for the
Southern District of New York
*Counsel for Defendant*
Telephone: 212-637-2737
Facsimile:  212-637-2786
sharanya.mohan@usdoj.gov

Of Counsel:

SHARANYA MOHAN
Assistant United States Attorney

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ..................................................................................................1

FACTUAL BACKGROUND .................................................................................................2

I.   The BIRLS Death File ......................................................................................................2

II.   Plaintiffs' FOIA Request and Administrative History.............................................................4

III.   Post-Complaint Analysis ................................................................................................6

ARGUMENT .......................................................................................................................10

I.   Standard of Review .........................................................................................................10

II.   The Government Has Properly Asserted FOIA Exemption 6 Over the Records at Issue.......11

    A.   Legal Standard .........................................................................................................11

    B.   The Withheld BIRLS Data Consists of Information Subject to Exemption 6 .................11

    C.   The Privacy Interests At Issue Outweigh Any Public Interest in Disclosure .................12

    D.   The Government Did Not Waive Its Ability to Withhold the Records Due to the Prior Release to Ancestry.com ..............................................................................................18

CONCLUSION......................................................................................................................19

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Assoc. Press v. U.S. Dep't of Justice,*
    549 F.3d 62 (2d Cir. 2008)............................................................................. 10, 12

*Assoc. Press v. U.S. Dep't of Def.,*
    554 F.3d 274 (2d Cir. 2009).................................................................................. 16

*Ayuda, Inc. v. Federal Trade Commission,*
    70 F. Supp. 3d 247 (D.D.C. 2014)......................................................................... 17

*Barnard v. Dep't of Homeland Sec.,*
    598 F. Supp. 2d 1 (D.D.C. 2009)........................................................................... 17

*Carney v. U.S. Dep't of Justice,*
    19 F.3d 807 (2d Cir. 1994).................................................................................... 10

*Edmonds v. FBI,*
    272 F. Supp. 2d 35 (D.D.C. 2003)......................................................................... 16

*Halloran v. Veterans Admin.,*
    874 F.2d 315 (1989).............................................................................................. 19

*John Doe Agency v. John Doe Corp.,*
    493 U.S. 146 (1989).............................................................................................. 10

*Johnson v. Executive Office for United States Attorneys,*
    310 F.3d 771 (D.C. Cir. 2002)............................................................................... 14

*Multi Ag. Media LLC v. Dep't of Agriculture,*
    515 F.3d 1224 (D.C. Cir. 2008)............................................................................. 13

*Nat'l Ass'n of Retired Fed. Employees v. Horner,*
    879 F.2d 873 (D.C. Cir. 1989)............................................................................... 13

*New York Times Co. v. U.S. Dep't of Justice,*
    872 F. Supp. 2d 309 (S.D.N.Y. 2012).................................................................... 10

*Painting and Drywall Work Preserv. Fund, Inc. v. HUD*
    936 F.2d 1300 (D.C. Cir. 1991)............................................................................. 19

ii

*People for the Am. Way Found. v. Nat'l Park Serv.*,
 503 F. Supp. 2d 284 (D.D.C. 2007) ........................................................ 13

*Schoenman v. F.B.I.*,
 576 F. Supp. 2d 3 (D.D.C. 2008) ...................................................... 11, 13

*Schrecker v. U.S. Dept. of Justice*,
 349 F.3d 657 (D.C. Cir. 2003) ................................................ 13, 15, 16

*Schrecker v. U.S. Dept. of Justice*,
 254 F.3d 162 (D.C. Cir. 2001) ............................................................ 16

*Seized Prop. Recovery, Corp. v. U.S. Customs & Border Prot.*,
 502 F. Supp. 2d 50 (D.D.C. 2007) ........................................................ 18

*Sherman v. U.S. Dept. of Army*,
 244 F.3d 357 (5th Cir. 2001) .............................................................. 18

*Summers v. Dep't of Justice*,
 140 F.3d 1077 (D.C. Cir. 1998) .......................................................... 13

*Talbot v. U.S. Dep't of State*,
 315 F. Supp. 3d 355 (D.D.C. 2018) .................................................. 16, 19

*U.S. Dep't of Def. v. FLRA*,
 510 U.S. 487 (1994) ........................................................................... 16

*U.S. Dep't of Justice v. Reporters Comm. for Freedom of Press*,
 489 U.S. 749 (1989) ................................................... 16, 17, 18, 19

*U.S. Dep't of State v. Washington Post Co.*,
 456 U.S. 595 (1982) .................................................................. 11, 12

*Wilner v. NSA*,
 592 F.3d 60 (2d Cir. 2009) ................................................................ 11

*Yelder v. Dep't of Def.*,
 577 F. Supp. 2d 342 (D.D.C. 2008) ...................................................... 12

**Statutes and Rules**

5 U.S.C. § 552(b)(6) ............................................................................. 11

Fed. R. Civ. P. 56 ................................................................................ 10

iii

Defendant United States Department of Veterans Affairs (the "VA" or "Defendant"), by and through its attorney Geoffrey S. Berman, United States Attorney for the Southern District of New York, respectfully submits this memorandum of law in support of its motion for summary judgment.

## PRELIMINARY STATEMENT

In this action, Plaintiffs Reclaim the Records and Brooke Schreier Ganz (collectively, "Plaintiffs") challenge the VA's determination to withhold certain records requested by Plaintiffs pursuant to the Freedom of Information Act ("FOIA").  Those records, contained in the VA's internal data extract called the "BIRLS Death File," consist of personal data, including social security numbers, gender, and military service information, about millions of veterans, a subset of which had been previously released pursuant to FOIA to the genealogy website Ancestry.com. In this case, the VA released requested information for over 5 million veterans, but withheld data for millions of others pursuant to FOIA Exemption 6, which protects certain information about third parties if their privacy interest in the withheld information outweighs any public interest in disclosure.

As set forth below, the VA properly invoked Exemption 6 to withhold the data at issue. As an initial matter, the withheld data is of the type of data protected by Exemption 6, which is read broadly and includes personal biographical data of the type requested.  Moreover, the balancing test weighs in favor of protecting the privacy interests of the veterans whose data was withheld.  The VA learned, from mistakes made in the Ancestry.com release, that the data requested may include data of living veterans, rather than dead veterans whose privacy interests are diminished.  Despite significant efforts, the VA was only able to verify, using reasonable criteria and multiple sources, the death status of a portion of the veterans included in the

Ancestry.com release.  Moreover, as Plaintiffs, through the administrative process, purported to

expand their request to include data for years subsequent to the Ancestry.com release, the VA

evaluated that data but determined that it was too error-ridden to be able to conduct a death

verification effort with the degree of comfort it required to release private veteran data.  Given

the minor, at best, public interest in the disclosure of this data, the VA properly withheld it, and

the Court should grant summary judgment to the VA.

**FACTUAL BACKGROUND**

## I.  The BIRLS Death File

The Veterans Business Administration ("VBA"), a subdivision of the VA, maintains a

database of information about veterans called the "Beneficiary Identification and Records

Locator Subsystem" or "BIRLS."  (Declaration of Derek Herbert, dated June 27, 2019, ("Herbert

Decl.") ¶ 4.)  The BIRLS database contains basic identifying information on VA claimants, such

as social security numbers, dates of birth, and military service information.  (*Id.*)  The sources for

this information include VBA employees who input data into BIRLS, primarily regarding a

veteran's service information or basic information such as the date of death for deceased

veterans, as well as external agencies who provide information to the VBA.  (*Id.*)

While VBA controls the BIRLS database (*id.*), each month, VBA provides the Veterans

Health Administration ("VHA"), a separate component of the VA, with a subset of BIRLS data

for all veterans in BIRLS who have a death date listed in BIRLS (Declaration of John Quinn III,

dated June 25, 2019 ("Quinn Decl.") ¶ 4).  VHA named this file the "BIRLS Death File."  (*Id.*)

While VHA is the data steward for the BIRLS Death File, VBA is the custodian of the BIRLS

data underlying the BIRLS Death File.  (*Id.*)  Each year, VA's Office of Information Technology

2

conducts an annual refresh of the BIRLS Death File, per instructions from VHA, to update and correct for any errors identified in the underlying BIRLS data.  (*Id*.)

In approximately 2010, the VA received a FOIA request from Ancestry.com for "a copy of the BIRLS Death File."  (Herbert Decl. ¶ 4.)  VHA was tasked with processing the Ancestry.com request.  (Quinn Decl. ¶ 5.)  Because the BIRLS Death File did not contain health information protected by the Health Insurance and Accountability Act of 1996, and all the veterans contained in the file were understood to be deceased, the VHA FOIA Office determined that VHA could release veteran full name, social security number, date of birth, date of death, gender, cause of death, and up to three military branch assignments including start and separation date.  (*Id*.)  The National Data Systems ("NDS") division of VHA formatted the data and provided the properly formatted copy of the BIRLS Death File to the VHA FOIA Officer at the end of September 2010.  (*Id.* ¶ 6.)  The VHA FOIA Officer released the responsive records in approximately March 2011 to Ancestry.com.  (*Id*.)

Prior to the release to Ancestry.com, VHA did not compare the BIRLS Death File against other data sources to validate the accuracy of the data.  (*Id.* ¶ 5.)  VHA believed that annual updates of the data were implemented and that source system for the data was generally accurate, including as to death status.  (*Id.* ¶ 5.)

In mid-December 2011, the VA became aware that some veterans whose data was contained within the Ancestry.com FOIA release and posted on Ancestry.com's website were incorrectly identified with a death date, and that those veterans were actually alive.  (Quinn Decl. ¶ 7.)  After several weeks of data analysis, the VA determined that 5,223 veterans were incorrectly identified with a death date from the 14.4 million veteran death records VA released

to Ancestry.com.  (*Id.* ¶ 8.)  The 5,223 records represented 0.04 percent of the records contained

in the BIRLS Death File released to Ancestry.com.  (*Id.*)

Once VA identified these 5,223 veterans to Ancestry.com, Ancestry.com removed

incorrect death information from Ancestry.com's website.  (*Id.*)  By January 2012, the VA

notified an initial group of veterans through U.S. mail of the release by the VA of data in

response to a FOIA request, the data elements (name, address, social security number, etc.)

contained in the released data, and that the VA had erroneously identified the veterans as

deceased in the data file.  (*Id.*)  The VA also provided one year of credit monitoring, requiring

each veteran to self-enroll in the credit monitoring program.  Through the remainder of that year,

the VA continued to notify the veterans in the group of 5,233 individuals whose information was

released for whom the VA had contact information, either for the veteran himself or for next-of-

kin if the veteran had passed away in the intervening time frame.  (*Id.*)

After VA provided crediting monitoring notifications to veterans, VBA and VHA entered

into a memorandum of understanding establishing data ownership and use of data owned by

VBA and used by VHA.  Pursuant to that agreement, VHA no longer releases data in response to

FOIA requests that belongs to VBA, including data from BIRLS.  (*Id.* ¶ 9.)

## II.  Plaintiffs' FOIA Request and Administrative History

On September 20, 2017, Plaintiff Brooke Ganz submitted a FOIA request to the VBA,

seeking "copy of the [BIRLS] Death File," which had "already been made available to the public

before" through Ancestry.com.   (Declaration of Deana M. Marakowski, dated June 21, 2019

("Marakowski Decl.") ¶ 3 & Ex. A.)  VBA denied the request on January 9, 2018, citing FOIA

Exemption 6, which, as stated in the denial letter, "permits VA to withhold a document or

4

information contained within a document if disclosure of the information would constitute a clearly unwarranted invasion of a living individual's personal privacy."  (*Id.* ¶ 4 & Ex. B.)

Plaintiffs then appealed that denial.  (*Id.* ¶ 5 & Ex. C.)  They argued, first, that the Ancestry.com release was already part of the public domain, and thus should be re-released to Plaintiffs regardless of whether any FOIA exemptions apply.  (*Id.*)  Consequently, Plaintiffs argued, the VA must provide Plaintiff Ganz with "the following extracts of the BIRLS Death File, for all individuals in the File, for the years 1850-2010: gender, birth date, death date, Social Security Number, cause of death, branch(es) of service, enlistment date(s), and release date(s)." (*Id.* Ex. C at 3.)  Second, Plaintiffs argued that the public benefit of release outweighed any privacy interest in the data.  Plaintiffs claimed that "by definition" the individuals in the BIRLS Death File have a "diminished privacy interest" in the information because they are deceased." (*Id.*)  Plaintiffs then argued that the information would provide "significant insight [into] how the government works by providing the public with information about the government's response to a significant number of wars and armed conflicts."  (*Id.* Ex. C at 4.)  The VA's Office of General Counsel ("OGC") referred the Request and appeal to the FOIA Office of the VHA, after determining that the VHA was the custodian of the "BIRLS Death File," as explained in more detail below.  (*Id.* ¶ 9 & Ex. D.)

The VHA FOIA Office and the VA OGC evaluated the FOIA Request in May 2018 and ultimately determined that VHA was not required under FOIA to compound the errors made in the Ancestry.com release by re-releasing that data.  (*Id.* ¶ 12.)  Thus, on July 26, 2018, VHA issued an initial agency decision ("IAD") denying the Request.  (*Id.* ¶ 13 & Ex. E.)  On August 6, 2018, Plaintiffs appealed the initial agency decision.  (*Id.* ¶ 14 & Ex. F.)  The VA acknowledged the appeal on August 7, 2018.  (*Id.* ¶ 15 & Ex. G.)

### III.   Post-Complaint Analysis

Plaintiffs filed this action on September 17, 2018.  (*See* Dkt. No. 2, "Amended Complaint.")  Shortly thereafter, VBA and VHA agreed to collaborate to work to validate the data that had previously been released to Ancestry.com, to determine whether any of that data could be re-released to Plaintiffs, based on reasonable efforts to confirm that the data was truly of deceased individuals.  (Herbert Decl. ¶ 7.)  Both VBA and VHA determined that it was necessary to re-analyze the Ancestry.com release, in part because the analysis done in mid-December 2011 to identify any living veterans was done in an effort to cure the release of personal information for living veterans as expeditiously as possible, but also because the BIRLS data underlying the BIRLS Death File is constantly updated, and thus the results of the analysis could have changed since 2011.  (Quinn Decl. ¶ 11.)

On December 12, 2018, NDS restored its copy of the original FOIA released file that had been sent to Ancestry.com.  (*Id*. ¶ 13.)  The data file contained records for 14,470,254 individuals.  (*Id.*)  NDS compared the 14.4 million records with the December 2018 VHA Vital Status Master File, which is a file that contains veteran data for veterans who either applied for health care eligibility or received health care from VA.  (*Id.*)  The Master Vital Status File is cross-referenced four times a year against the Social Security Death Master File, death information recorded by the Centers for Medicare and Medicaid Services, the BIRLS Death File, the VA Master Veteran Index, and VHA's patient admission/discharge system that records a patient's discharge including discharge by death.  (*Id.* ¶ 10.)

NDS compared the social security numbers of the individuals in the now-restored Ancestry.com release against the Master Vital Status File and determined that approximately 78% of the individuals in the Ancestry.com release were not in the Master Vital Status File.  (*Id.*

¶ 13.)  This was an expected result as the VHA Vital Status File only includes information about veterans enrolled for health care or receiving health care.  (*Id*.)  NDS also compared the 14.4 million records with the BIRLS Death File created as of December 2018.  (*Id.*)  There were approximately 18,000 veterans on the Ancestry.com FOIA released data set that were no longer found on the December 2018 BIRLS Death File, and NDS was unable to determine the reason for the discrepancies.  (*Id. ¶* 14.)

Ultimately, NDS was able to locate information on 3,212,684 veterans from the Ancestry.com FOIA release in the December 2018 VHA Master Vital Status File.  (*Id. ¶* 15.)  Of those 3.2 million individuals, roughly 4,200 veterans were identified by NDS with an indicator that they were alive in the VHA Master Vital Status File.  (*Id.*)  This confirmed that there are still veterans whose data was part of the Ancestry.com FOIA data release who are, as of December 2018, alive.  (*Id.*)  NDS also found that 36 of the individuals matched had both a living indicator and a death indicator in the VHA Master Vital Status File.  (*Id.*)  Finally, NDS found that approximately 427,300 individuals were indicated to be dead in the VHA Master Vital Status File, but had more than one unique date of death.  (*Id.*)  Moreover, even when specifically analyzing individuals who were in the Master Vital Status File with only one date of death, VHA had significant concerns about the accuracy of the death information in the BIRLS Death File and concerns about the validity of any comparative verification process that could be done against sources like the Master Vital Status File, which is limited in scope and in turn relies on data sources that may themselves contain inaccuracies.  (*Id.*)  VHA conveyed these concerns to VBA, but also provided portions of the VHA Master Vital Status data for the matched individuals, including all available death dates, to VBA so that VBA could conduct its own analysis.  (*Id.*)

7

VBA then cross-referenced the entire Ancestry.com dataset against the Vital Status File information provided by VHA, as well as BIRLS; the VBA's Corporate Database, which is the authoritative repository for all claims related information at the VA; the VHA Inpatient File, which is the authoritative repository for all inpatient information at the VA; and the VHA Administrative Data Repository, which is a VHA repository of claims information to which VBA has access.  (Herbert Decl. ¶ 8.)  VBA determined that the criteria required for the deceased status of a record to be valid, and thus could be released to Reclaim the Records,  was that the veteran must have matching dates of death in at least two of the VA data sources discussed above.  (*Id.*)  Additionally, if there were conflicting death dates for an individual in the data sources cross-referenced by VHA and VBA, or if any of the data sources included a living indicator for that individual, that individual's record was determined to have an invalid death date for the purposes of this analysis.  (*Id.*)

Pursuant to the VBA's analysis, VA released the following fields (where available) of information for 5,017,533 individuals: gender, birth date, death date, and Social Security Number, and up to three branch(es) of service, enlistment date(s), and release date(s).  (Herbert Decl. ¶ 9; *see* Mohan Decl. Ex. A.)  VA did not release the cause of death field for those individuals because different data sources contained contradictory information, and VBA only validates causes of death when needed to provide benefits to veterans and dependents.  (Herbert Decl. ¶ 9.)

VBA then provided VHA with an extract from BIRLS of data for potentially deceased veterans post-dating the Ancestry.com release, meaning that the veterans had a date of death between January 1, 2010 and April 3, 2019 (the "post-Ancestry data").  (Herbert Decl. ¶ 10.)  The post-Ancestry data included 3,244,841 veterans.  (Quinn Decl. ¶ 16.)  NDS found very poor

8

data quality.  (*Id.*)  For instance, NDS found that 36.6 percent of the date of births listed were after the current date which was April 4, 2019, at the time of analysis.  (*Id.*)  NDS also found that the difference between the date of death and date of birth was less than 16 years for 41 percent of the veterans in the post-Ancestry.com BIRLS data, including some veterans whose birth dates were listed as later than their death dates.  (*Id.*)  Altogether, about 45 percent of the post-Ancestry.com BIRLS data provided by VBA had some sort of error apparent from the face of the data, including the errors described above.  (*Id.*)

After identifying these data errors and coding the post-Ancestry.com BIRLS data to note those records that had such errors, NDS made efforts to match the individuals in the BIRLS data with the VHA Master Vital Status File using their social security numbers.  (*Id.* ¶ 17.)  Approximately 965,000 of those individuals were not matched to information in the VHA Master Vital Status File.  (*Id.*)  Of the remainder, 22,483 veterans were identified by NDS with an indicator that they were alive in the VHA Master Vital Status File.  (*Id.*)  NDS also found that 207 of the individuals matched had both a living indicator and a death indicator in the VHA Master Vital Status File.  (*Id.*)  Finally, NDS found that approximately 132,323 individuals were indicated to be dead in the VHA Master Vital Status File, but had multiple unique death dates. (*Id.*)

VHA provided its analysis to VBA on April 15, 2019.  (*Id.* ¶ 18.)  Based on the significant number of obvious errors in the data, as well as the concerns that VHA had about attempting to verify the BIRLS Data through other data sources, as discussed further above, VHA recommended to VBA that the data should not be released.  (*Id.*) VBA reviewed that analysis.  (Herbert Decl. ¶ 11.)  VBA concurred with the recommendation to limit the release of data based on the analyses described above.  (*Id.*)  In particular, VBA determined that the post-

9

Ancestry data was so error-filled that it could not feel confident that the use of the same cross-referencing efforts and criteria for release would identify those veterans with BIRLS death dates who were, in fact, deceased.  (*Id.*)

## ARGUMENT

### I.  Standard of Review

FOIA disputes are generally resolved by summary judgment.  *See, e.g., Carney v. U.S. Dep't of Justice*, 19 F.3d 807, 812 (2d Cir. 1994).[1]  Summary judgment is warranted if a movant shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

The only issue raised in this motion for summary judgment is whether the government properly applied FOIA Exemption 6 to withhold portions of the BIRLS Death File. While FOIA is intended to promote government transparency, the FOIA exemptions are "intended to have meaningful reach and application."  *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 152 (1989).  FOIA thus balances "the public's right to know and the government's legitimate interest in keeping certain information confidential." *Assoc. Press v. U.S. Dep't of Justice*, 549 F.3d 62, 64 (2d Cir. 2008) (internal quotation marks omitted).

To meet its summary judgment burden on exemptions, the government may rely on declarations that give "reasonably detailed explanations why any withheld documents fall within an exemption." *Carney*, 19 F.3d at 812 (footnote omitted). An agency's declaration in support of its determination that records are exempt is "accorded a presumption of good faith." *Id.*

---

[1] The government has not submitted a Local Rule 56.1 statement. "The general rule in this Circuit is that in FOIA actions, agency affidavits alone will support a grant of summary judgment, and Local Civil Rule 56.1 statements are not required."  *New York Times Co. v. U.S. Dep't of Justice*, 872 F. Supp. 2d 309, 314 (S.D.N.Y. 2012) (internal quotation marks and alterations omitted).

(quotation marks omitted); *Wilner v. NSA*, 592 F.3d 60, 69 (2d Cir. 2009).  The agency's justification for asserting an exemption need only appear "logical or plausible." *Wilner*, 592 F.3d at 73 (citation and internal quotation marks omitted).

## II.   The Government Has Properly Asserted FOIA Exemption 6 Over the Records at Issue

### A.   Legal Standard

Exemption 6 exempts from disclosure information from "personnel, medical, or other similar files" where disclosure "would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6).  The purpose of exemption 6 is to "protect individuals from the injury and embarrassment that can result from the unnecessary disclosure of personal information."  *U.S. Dep't of State v. Washington Post Co*., 456 U.S. 595, 599 (1982).

Records of information must meet two criteria to fall within the protection of Exemption 6.  A court must determine first that they are "personnel and medical files and similar files," and second, that the public interest in disclosure does not outweigh the privacy interests at issue. *Schoenman v. F.B.I.*, 576 F. Supp. 2d 3, 8 (D.D.C. 2008).  As set forth below, both criteria apply to the veteran records at issue.

### B.   The Withheld BIRLS Data Consists of Information Subject to Exemption 6

As an initial matter, the personal data sought by Plaintiffs for millions of veterans from the BIRLS database is the type of record that falls within the purview of Exemption 6.  The Supreme Court has interpreted the types of files that qualify for protection under Exemption 6 broadly, stating that all information that "applies to a particular individual" meets the threshold requirement for Exemption 6.  *Dep't of State v. Washington Post Co*., 456 U.S. 595, 599-603 (1982).  Moreover, the information need not be contained in a "personnel" file.  As the Supreme Court stated:

11

> [T]he protection of an individual's right of privacy which Congress sought to achieve by preventing the disclosure of [information] which might harm the individual . . . , surely was not intended to turn upon the label of the file which contains the damaging information.

456 U.S. at 601 (internal quotation marks and citation omitted).  Courts have consistently found that personal information implicates a privacy interest cognizable under the FOIA exemptions. *Assoc. Press*, 549 F.3d at 65 (citing cases); *see Wash. Post Co.*, 456 U.S. at 600 (finding that "[i]nformation such as place of birth, date of birth, date of marriage, employment history, and comparable data is not normally regarded as highly personal, and yet . . . such information . . . would be exempt from any disclosure that would constitute a clearly unwarranted invasion of personal privacy"); *Yelder v. Dep't of Def.*, 577 F. Supp. 2d 342, 346 (D.D.C. 2008) (noting that information such as names, addresses, and other personally identifying information creates a palpable threat to privacy).

The type of information sought here, including social security numbers, gender, birth and death dates, and information about military service specific to each individual, are therefore clearly within the ambit of the types of records protected by Exemption 6.  To date, Plaintiffs have not argued that the data sought do not qualify as the types of records covered by Exemption 6.  Instead, they have argued that the public interest in disclosure outweighs any privacy interests of the veterans at issue.  As discussed below, that argument is misplaced.

## C.  The Privacy Interests At Issue Outweigh Any Public Interest in Disclosure

Because the public's interest in obtaining the withheld BIRLS records does not outweigh the significant privacy interests of potential live veterans, disclosure is not warranted. As noted above, Plaintiffs have argued that the public interest in disclosure outweighs the privacy interest of the individuals in the BIRLS Death File because (1) the individuals in the File are, by definition, dead, and (2) the requested information would provide "significant insight"

into "how the government works" in times of war and armed conflict.  (Marakowski Decl. Ex.

C.)  Plaintiffs are simply incorrect on the first point, and Plaintiffs' arguments on the second

point do not suffice to outweigh the invasion of privacy of millions of veterans, many of whom

are potentially alive.

As an initial matter, and as discussed above, Plaintiffs cannot dispute that significant

privacy interests are at stake in this case.  Plaintiffs seek personal identifying information about

millions of veterans, as well as specific information about their participation in the military, and

information about how those veterans died.  Improper release of this information "'would

compromise a substantial, as opposed to *de minimis*, privacy interest,'" as required for

application of Exemption 6.  *Multi Ag. Media LLC v. Dep't of Agriculture*, 515 F.3d 1224, 1230

(D.C. Cir. 2008) (quoting *Nat'l Ass'n of Retired Fed. Employees v. Horner*, 879 F.2d 873, 874

(D.C. Cir. 1989)); *People for the Am. Way Found. v. Nat'l Park Service*, 503 F. Supp. 2d 284,

304 (D.D.C. 2007) ("The privacy interest in nondisclosure encompasses an individual's control

of personal information and is not limited to that of an embarrassing or intimate nature.").

It is true that FOIA law establishes "that the privacy interest in nondisclosure of

identifying information may be diminished where the individual is deceased," and that "[t]he fact

of death, therefore, while not requiring the release of information, is a relevant factor to be taken

into account in the balancing decision whether to release information."  *Schrecker v. U.S. Dept.

of Justice*, 349 F.3d 657, 661 (D.C. Cir. 2003) (quotation omitted).  For that reason, Courts

expect agencies to make "a reasonable effort to ascertain life status" before invoking FOIA

Exemption 6 on the basis that the information requested involves live individuals.  *Schoenman v.

F.B.I.*, 576 F. Supp. 2d 3, 9 (D.D.C. 2008).  And the government's efforts must be assessed in

light of the accessibility of the relevant information.  *See Summers v. Dep't of Justice*, 140 F.3d

1077, 1085 (D.C. Cir. 1998) (Williams, J., concurring) ("[T]here would be a question whether the Bureau's invocation of the privacy interest represented a reasonable response to the FOIA request, at least if the Bureau has, or has ready access to, data bases that could resolve the issue."). Courts have cautioned that it would be inappropriate to mandate "a brightline set of steps for an agency to take in this situation" as FOIA requires both "systemic and case-specific exercises of discretion and administrative judgment and expertise." *Johnson v. Executive Office for United States Attorneys*, 310 F.3d 771, 776 (D.C. Cir. 2002).

Contrary to Plaintiffs' conclusory assertion at the administrative level, it is not the case that the BIRLS Death File, by definition, contains only deceased individuals. The VA learned this the hard way in connection with the Ancestry.com release, after which the VA identified thousands of veterans whose information was released who were, in fact, alive. (Quinn Decl. ¶ 7.) The VA then went through significant efforts to mitigate the release of those veterans' records, including working with Ancestry.com to keep that information from public view, and notifying those veterans or those families of the release of their information, and providing credit monitoring. (*Id.* ¶ 8.)

In processing Plaintiffs' request for the records in the Ancestry.com release, both VHA and VBA then made significant efforts to ascertain death status. Through the work of both components, the VA compared the records of 14 million individuals against several available data sources, and established a consistent and reasonable criteria for deeming a BIRLS death date to be valid. (*See* Quinn Decl. ¶¶ 13-15; Herbert Decl. ¶ 8.) Using that criteria, the VA was able to confirm death status for over 5 million individuals, and, accordingly, segregated and released the requested data for those individuals.

14

Further, although the post-Ancestry.com data was *not* part of Plaintiffs' original FOIA Request (*see* Marakowski Decl. Ex. A), VA proceeded to collect the responsive data and evaluate it to verify death dates.  As set forth in the Quinn Declaration and discussed in detail above, *see supra* p. 9, the data was, on its face, deeply flawed.  NDS made efforts to match the individuals in the BIRLS data with the VHA Master Vital Status File using their social security numbers.  Approximately 965,000 of those individuals were not matched to information in the VHA Master Vital Status File, a significant portion of which had no death indicator or a conflicting death indicator.  (Quinn Decl. ¶ 16.)  Of the remainder, 22,483 veterans were identified by NDS with an indicator that they were alive in the VHA Master Vital Status File. (*Id.*)  NDS also found that 207 of the individuals matched had both a living indicator and a death indicator in the VHA Master Vital Status File.  (*Id.*)  Finally, NDS found that approximately 132,323 individuals were indicated to be dead in the VHA Master Vital Status File, but had multiple unique death dates.  VHA provided its analysis to VBA on April 15, 2019.  (*Id.*)  Based on the significant number of obvious errors in the data, as well as the concerns that VHA had about attempting to verify the BIRLS Data through other data sources, as discussed further above, VHA recommended to VBA that the data should not be released.  (*Id.*)  VBA reviewed the materials that VHA provided and agreed with VHA's conclusion.  (Herbert Decl.¶ 11.)

These efforts constitute "reasonable efforts" to ascertain life status.  *See Schrecker*, 349 F.3d at 664; *Talbot v. U.S. Dep't of State*, 315 F. Supp. 3d 355, 366 (D.D.C. 2018).  The VA used multiple tools available to it to locate death dates and applied a criteria designed to, at a minimum, exclude any individual whose death status was unclear or clearly incorrect based on the available data, consistent with accepted methodologies under FOIA law.  *See Schrecker*, 349 F.3d at 665 (accepting methodology that was "intended to prevent disclosure of personal

15

information unless it is *highly probable* that the individual in question is dead." (emphasis in original)).  Ultimately, as a result of these efforts, the VA was able to confirm the death status, and release the data, for over 5 million individuals who were part of the original scope of the Plaintiffs' request.[2]  For the remainder of the individuals, the VA reasonably determined that it should not risk the disclosure of data of potentially living individuals, given their privacy interests and the risks of reidentification.

In short, the withheld data consists of data of individuals whom the VA was unable to confirm, despite reasonable efforts, were actually deceased, thus implicating significant privacy interests.  Plaintiffs must show that disclosure would be warranted because an applicable public interest outweighs those privacy interests.  *See, e.g., Assoc. Press v. U.S. Dep't of Def.*, 554 F.3d 274, 285 (2d Cir. 2009); *Edmonds v. FBI*, 272 F. Supp. 2d 35, 53 (D.D.C. 2003).  The only relevant public interest in disclosure, however, "is the extent to which disclosure would serve the 'core purpose of the FOIA,' which is 'contribut[ing] significantly to public understanding of the operations or activities of the government.'"  *U.S. Dep't of Def. v. FLRA*, 510 U.S. 487, 495 (1994) (quoting *U.S. Dep't of Justice v. Reporters Comm. for Freedom of Press*, 489 U.S. 749, 775 (1989)).  As such, the only public interest that counts is the "the incremental value of the specific information being withheld."  *Schrecker*, 349 F.3d at 661.

---

[2] The VA, properly, withheld the "cause of death" field for those individuals whose data was otherwise subject to release.  As set forth in the Herbert Declaration, different data sources had contradictory cause of death information, and moreover, VBA only validates causes of death when needed to provide benefits to veterans and dependents.  (Herbert Decl. ¶9.)  That the individuals subject to release were determined to be deceased does not eliminate their privacy rights; instead, it is merely a consideration in FOIA balancing.  *See, e.g., Schrecker v. U.S. Dept. of Justice*, 254 F.3d 162, 166 (D.C. Cir. 2001).  Information about how these veterans died, combined with the unreliability of that cause of death information, weighs against the release of the cause of death field even to the extent that the veterans' privacy interest is diminished due to death, particularly where Plaintiffs have not identified a significant public interest in disclosure.

Further, the requested information must thus "shed[ ] light on an agency's performance of its statutory duties." *Reporters Comm.*, 489 U.S. at 773.  The law mandates that a nexus exists between the records being sought and the legitimate FOIA public interest allegedly being furthered.  *See Barnard v. Dep't of Homeland Sec.*, 598 F. Supp. 2d 1, 13 (D.D.C. 2009) (explaining that when "the nexus between the information sought and the asserted public interest is lacking, the asserted public interests will not outweigh legitimate privacy interests" (citations omitted)); *Seized Prop. Recovery, Corp. v. U.S. Customs & Border Prot.*, 502 F. Supp. 2d 50, 59 (D.D.C. 2007) (explaining that "[t]here must be a nexus between the information that is sought under FOIA and the ability of the public to gain an understanding about the agency's operations" (internal citation and quotation marks omitted)); *Ayuda, Inc. v. Federal Trade Commission*, 70 F. Supp. 3d 247, 269-70 (D.D.C. 2014).  The Supreme Court has expressed that a "public interest is not furthered 'by disclosure of information about private citizens that is accumulated in various governmental files but that reveals little or nothing about an agency's own conduct.'"  *People for the Am. Way*, 503 F. Supp. 2d at 304 (D.D.C. 2007) (quoting *Reporters Comm.*, 489 U.S. at 773).

Plaintiffs cannot meet their burden.  Indeed, to date, Plaintiffs have not made any serious effort to demonstrate that the incremental value in disclosure of millions of records of veterans' personal data, that could risk breaching the privacy of living veterans, outweighs the individual privacy concerns.  *Touarsi v. U.S. Dep't of Justice*, 78 F. Supp. 3d 332, 346 (D.D.C. 2015) (" In analyzing the public's interest, the inquiry should focus not on the general public interest in the subject matter of the FOIA request, but rather on the incremental value of the specific information being withheld.") (internal quotation marks omitted).  In their administrative appeal, Plaintiffs claimed, vaguely, that the BIRLS Death File data they seek "will enable members of the public to act as historians and better understand the government's response to armed

17

conflicts." (Marakowski Decl. Ex. C.) But aggregate historical data about veterans, and military participation in historic armed conflicts, are available through numerous existing public sources, including from the VA.[3] Thus, the marginal contribution of a veteran-by-veteran database of personal information to the effort to gain a historical understanding of the government's response to armed conflict is small, to say the least, and certainly too small to outweigh the infringement on the privacy of millions of veterans.

In short, Plaintiffs have not established any public interest in disclosure that would further the purposes of FOIA. As such, Plaintiffs have failed to meet their burden to show that such a public interest outweighs the significant privacy interests described above. *See Talbot*, 315 F. Supp. 3d at 366 ("The privacy interests of [private third parties] in their personal biographical information thus outweigh whatever public interest might exist in the disclosure of the information."); *Painting and Drywall Work Preserv. Fund, Inc. v. HUD*, 936 F.2d 1300, 1303 (D.C. Cir. 1991) ("attenuated public interest in disclosure does not outweigh the construction workers' significant privacy interest in the requested information").

### D. The Government Did Not Waive Its Ability to Withhold the Records Due to the Prior Release to Ancestry.com

Finally, contrary to Plaintiffs' arguments during their administrative appeal, the VA did not somehow waive its ability to withhold the data at issue pursuant to the "public domain doctrine," through its prior release to Ancestry.com. The Supreme Court has explained that the privacy interest at stake in FOIA exemption analysis belongs to the individual, not the agency holding the information. *Reporter's Comm.*, 489 U.S. at 763-65; *Sherman v. U.S. Dept. of Army*,

---

[3] *See, e.g.*, https://www.va.gov/vetdata/veteran_population.asp; https://www.archives.gov/research/military/veterans/online.

244 F.3d 357, 363-64 (5th Cir. 2001) ("[W]e hold that only the individual whose informational privacy interests are protected by exemption 6 can effect a waiver of those privacy interests when they are threatened by an FOIA request.").  Moreover, the fact that otherwise private information about an individual may have been erroneously placed the public domain does not result in that person irretrievably losing his or her privacy interest in the information.  *Reporter's Comm.*, 489 U.S. at 770; *Halloran v. Veterans Admin.*, 874 F.2d 315, 322 (1989); *Nat'l Immigration Law Ctr. v. ICE*, No. CV-14-9632, 2015 WL 12684437, at *13 (C.D. Cal. Dec. 11, 2015) (granting motion for summary judgment on the application of exemption 7(E) as to portions of a document that had been erroneously released in the past because "inadvertent disclosures should be treated differently"); *Blackwell v. F.B.I.*, 680 F. Supp. 2d 79, 95 n.6 (D.D.C. 2010) (inadvertent disclosure of names by FBI in response to FOIA request "do not waive the individuals' privacy interests").

As set forth above, the VA admittedly erred in making the Ancestry.com release without evaluating whether the individuals in that release were actually dead, and made significant post-hoc efforts to correct that error.  There is no basis in FOIA law to require the VA to repeat and compound that error by releasing even more veteran data that it could not, despite great effort, comfortably conclude consisted of data of deceased individuals.

## CONCLUSION

For these reasons, the Government respectfully requests that the Court grant its motion for summary judgment as to Plaintiffs' FOIA claims.

Dated:  New York, New York
        July 5, 2019

                                        Respectfully submitted,

                                        GEOFFREY S. BERMAN
                                        United States Attorney for the
                                        Southern District of New York

                                    By: */s/ Sharanya Mohan*
                                        SHARANYA MOHAN
                                        Assistant United States Attorney
                                        86 Chambers Street, Third Floor
                                        New York, NY 10007
                                        Tel.: (212) 637-2737
                                        Fax: (212) 637-2786
                                        sharanya.mohan@usdoj.gov

                                        20