**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

RECLAIM THE RECORDS and BROOKE SCHREIER GANZ,

                                 Plaintiffs,

   - against -

UNITED STATES DEPARTMENT OF VETERANS AFFAIRS, including its Components, the Office of General Counsel, the Veterans Benefits Administration, and the Veterans Health Administration,

                                 Defendant.

No. 18-CV-8449

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND CROSS-MOTION IN SUPPORT OF SUMMARY JUDGMENT**

October 11, 2019

BELDOCK LEVINE & HOFFMAN LLP
99 Park Avenue, PH/26th Floor
New York, New York 10016
(212) 490-0400
*Attorneys for Plaintiffs*

TABLE OF CONTENTS

I. Preliminary Statement ................................................................................................................ 1

II. Statement of Facts .................................................................................................................... 1

III. Legal Standard ........................................................................................................................ 3

IV. Argument ................................................................................................................................ 3

    a.   Standard of Review ....................................................................................................... 3

    b.   Judgment as a Matter of Law ........................................................................................ 4

        i.   The VA is required by the Public Domain Doctrine to release the BIRLS Death File. 5

        ii.  Exemption 6 does not apply where the public interest in disclosing the information outweighs the privacy interest at stake. ...................................................................... 6

        iii. The privacy interest is minimal because it is highly probable that the individuals in question are deceased. ....................................................................................................... 7

        iv. The public interest in the disclosure of the information outweighs the minimal privacy interest. .............................................................................................................. 9

        v.   The VA's motion for summary judgment motion fails as no FOIA exemption applies ....................................................................................................................................... 11

V. Conclusion .............................................................................................................................. 12

# Table of Authorities

**Cases**

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) .............................................................. 3, 4

*Aslanidis v. U.S. Lines, Inc.*, 7 F.3d 1067 (2d Cir. 1993) ............................................................... 3

*Assembly of Cal. v. United States Dep't of Commerce*, 968 F.2d 916 (9th Cir. 1992) ................ 12

*AP v. United States DOD, 554 F.3d 274* (2nd Cir. 2009) .............................................................. 10

*Bloomberg, L.P. v. Board of Governors of the Fed. Reserve Sys.*, 601 F.3d 143 (2d Cir. 2010) ... 4

*Cook v. Nat'l Archives & Records Admin.*, 921 F. Supp. 2d 148 (S.D.N.Y. 2013) ......................... 6

*Cottone v. Reno*, 193 F.3d 550 (D.C. Cir. 1999). ........................................................................... 5

*Dep't of Justice v. Reporters Comm. for Freedom of Press*, 489 U.S. 749 (1989) ............ 9, 10, 11

*Department of Justice v. Tax Analysts*, 492 U.S. 136, 109 S. Ct. 2841 (1989) ............................ 10

*FLRA v. United States Dep't of Veterans Affairs*, 958 F.2d 503 (2d Cir. 1992) .......................... 11

*McGehee v. CIA*, 697 F.2d 1095 (D.C. Cir. 1983) ......................................................................... 4

*N.Y. Times Co. v. U.S. Dep't of Homeland Sec.*, 959 F. Supp. 2d 449 (S.D.N.Y. 2013) ............ 5, 9

*Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157 (2004) ................................................ 7

*Painting & Drywall Work Pres. Fund v. Dep't of House. & Urban Dev.*, 936 F.2d 1300 (D.C. Cir. 1991) ................................................................................................................................ 4, 11

*Petroleum Info. Corp. v. United States Dep't of Interior*, 298 U.S. App. D.C. 125, 976 F.2d 1429 (1992) .................................................................................................................................... 12

*Powell v. Nat'l Bd. of Med. Exam'rs*, 364 F.3d 79 (2d Cir. 2004) .................................................. 3

*Schrecker v. United States DOJ*, 349 F.3d 657 (D.C. Cir. 2003) ..................................... 4, 7, 8, 12

*Sims v. Central Intelligence Agency*, 642 F.2d 562, 206 U.S. App. D.C. 157 (D.C. Cir. 1980) .... 6

*Talbot v. United States Dep't of State*, 315 F. Supp. 3D 355 (D.D.C. 2018) ............................... 11

*U.S. Dep't of Def. v. Fed. Labor Relations Auth.*, 510 U.S. 487, 114 S. Ct. 1006 (1994) ....... 9, 10

*U.S. Dep't of State v. Washington Post Co.*, 456 U.S. 595, 102 S. Ct. 1957 (1982) ...................... 6

*United States v. Diebold, Inc.*, 369 U.S. 654 (1962) ....................................................................... 3

*Vt. Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241 (2d Cir. 2004) ..................................... 3

*Wolf v. CIA*, 473 F.3d 370 (D.C. Cir. 2007) ................................................................................... 5

*Wood v. FBI*, 432 F.3d 78 (2d Cir. 2005) ....................................................................................... 6

**Statutes**

5 U.S.C. §§552 ..................................................................................................................................... 1

5 U.S.C.A. § 552(a)(ii) ......................................................................................................................... 2

## I. Preliminary Statement

This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C. §§552 *et seq*., seeking the production of agency records improperly withheld by Defendant United States Department of Veterans Affairs ("VA"), specifically its component the Veterans Health Administration ("VHA") ("Defendant"), in response to requests properly made by Plaintiff.

Plaintiff seeks an injunction requiring defendant to release the requested records.

Defendant has artificially heightened their burden for ascertaining death status by treating as unreliable such indicators of death as hospital records and obituaries in order to claim Exemption 6 and withhold the requested records.

Plaintiff opposes defendant's motion for summary judgment because defendant has not met its burden of demonstrating entitlement to judgment as a matter of law.

Plaintiff moves for summary judgment because defendant has failed to claim any valid exemption for the requested records and therefore must disclose the data.

## II. Statement of Facts

By email, on September 20, 2017, plaintiffs sent a Freedom of Information Act ("FOIA") request to the VA's Veterans Benefits Administration ("VBA") asking for a copy of the Beneficiary Identification Records Locator Subsystem ("BIRLS") Death File. In the request, Ms. Ganz noted that the data contained in the BIRLS Death File had already been made available to the public and was currently available online through at least two major genealogy websites, Ancestry.com and Fold3.com, a contention the Government does not dispute. *Declaration of David B. Rankin* ("Rankin") Exhibit 1 ("Exh. 1").

After not receiving a response to her inquiry within 20 days, as required by 5 U.S.C.A. § 552(a)(ii), Ms. Ganz sent five follow up emails dated: October 19, 2017, November 8, 2017, November 28, 2017, December 18, 2017, and January 8, 2018.

On January 9, 2018 FOIA Officer Gwendolyn Smith denied Ms. Brooke Ganz's request for a copy of the most current and complete BIRLS Death File. Ms. Smith asserted that a full copy of the records could not be provided because the records "contained information that falls within the disclosure protections of FOIA Exemption 6, 5 U.S.C. § 552(b)(6)." Rankin Exh. 2.

On April 6, 2018, Plaintiffs' counsel appealed the January 9, 2018 VBA denial of Ms. Ganz's FOIA request to the VA Office of the General Counsel. Rankin Exh. 3.

On April 26, 2018, Plaintiffs' counsel received a response regarding the appeal from Kenyatta McLeod-Poole, Acting Chief Counsel, Information Law Group, VA Office of the General Counsel. McLeod-Poole of the VA Office of the General Counsel indicated that, through internal investigation, the VHA and not the VBA were the proper custodians of the BIRLS Death File, and that they, the VHA, had been notified of plaintiffs' FOIA request and would process it in a timely manner. Rankin Exh. 4.

On July 26, 2018, the VHA denied plaintiffs' FOIA request in its entirety, stating that VHA's voluntary release of the information to Ancestry.com, was an "erroneous release [which] resulted in a data breach of Veteran's personal information." Rankin Exh. 5.

The defendant's denial of the plaintiffs' request was erroneous.

On August 6, 2018, the undersigned appealed the July 26, 2018 denial. Rankin Exh. 6.

On August 7, 2018, the agency acknowledged the appeal. Rankin Exh. 7.

On April 11, 2019, the agency released approximately 7 limited fields of BIRLS data on approximately 5 million of the 14.4 million individuals listed on the pre-2011 BIRLS Death File.

2

Plaintiffs continue to seek a full copy of the BIRLS Death File.

The agency's continuing denial of requests for the remaining data is without merit.

### III. Legal Standard

In ruling on a motion for summary judgment and assessing whether there is a genuine issue to be tried as to any material fact, the court is required to resolve all ambiguities and draw all factual inferences in favor of the party against whom summary judgment is sought. *See, e.g., Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) (per curiam) (inferences to be drawn from the underlying facts revealed in materials such as affidavits, exhibits, and depositions, must be viewed in the light most favorable to the party opposing the motion).

It is the initial burden of a movant to come forward with evidence on each material element of his claim or defense, demonstrating that he or she is entitled to relief as a matter of law. *Vt. Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004). The non-movant carries only "a limited burden of production," but "must 'demonstrate more than some metaphysical doubt as to the material facts,' and come forward with 'specific facts showing that there is a genuine issue for trial.'" *Powell v. Nat'l Bd. of Med. Exam'rs*, 364 F.3d 79, 84 (2d Cir. 2004) (quoting *Aslanidis v. U.S. Lines, Inc*., 7 F.3d 1067, 1072 (2d Cir. 1993)).

### IV. Argument

a.  **Standard of Review**

Courts will review *de novo* whether an agency has sustained its burden of proving the applicability of claimed exemptions. *Bloomberg, L.P. v. Board of Governors of the Fed. Reserve Sys.*, 601 F.3d 143, 147 (2d Cir. 2010). "The agency's decision that the information is exempt from disclosure receives no deference." *Ibid.*

3

**b.     Judgment as a Matter of Law**

Veterans Affairs has not successfully met the requirements to entitle them to summary judgment. In a FOIA case, the agency must demonstrate both the absence of a genuine dispute as to material facts and that it is entitled to judgment as a matter of law at the summary judgment stage. *McGehee v. CIA*, 697 F.2d 1095, 1101 (D.C. Cir. 1983). The Court may deny the VA's motion for summary judgment—and grant Plaintiff's cross-motion—on the grounds the VA has not met its burden of persuasion by showing it is entitled to judgment as a matter of law. *Painting & Drywall Work Pres. Fund v. Dep't of House. & Urban Dev.*, 936 F.2d 1300, 1302 (D.C. Cir. 1991) (where "there is no quarrel as to the material facts," court must still apply the relevant law).

The defendant has not met their burden of showing the individuals in the BIRLS Death File are not deceased. All inferences regarding disputed facts must be drawn in favor of the nonmoving party during a summary judgment motion. *See, e.g., Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The government here offered only a rebuttable presumption that individuals in the BIRLS Death File are alive. Additionally, the government is not entitled to judgment as a matter of law as, under the standard employed in *Schrecker v. United States DOJ*, 349 F.3d 657 (D.C. Cir. 2003), the government has failed to meet its burden of proving that there is a substantial probability that any given individual on the BIRLS Death File is alive. If the defendant cannot meet this burden, they can claim no exemption for the requested information and summary judgment should be granted for the plaintiffs.

### i. The VA is required by the Public Domain Doctrine to release the BIRLS Death File.

The VA concedes it previously released the BIRLS Death File into the public domain, but incorrectly states that the previous disclosure is of no effect and does not compel them to release the information to Ms. Ganz. The VA is required to provide Ms. Ganz the BIRLS Death File as it has already disclosed the list to the public and is therefore barred from claiming an exception by the public domain doctrine. This Court has found that "the privacy interest [in an Exemption 6 claim]… is significantly diminished" where the interest is in "not releasing in compiled form information which is already public." *N.Y. Times Co. v. United States Dep't of Homeland Sec.*, 959 F. Supp. 2d 449, 455 (S.D.N.Y. 2013). Under the public domain doctrine, "materials normally immunized from disclosure lose their protective cloak once disclosed and preserved in a permanent public record." *Cottone v. Reno*, 193 F.3d 550, 553–54 (D.C. Cir. 1999). This doctrine recognizes that "where information requested 'is truly public . . . enforcement of an exemption cannot fulfill its purposes.'" *Cottone*, 193 F.3d at 554. The requestor "bears the initial burden of pointing to specific information in the public domain that appears to duplicate that being withheld," and the requestor must show the specific information being sought is in the public domain by official disclosure. *Wolf v. CIA*, 473 F.3d 370, 378 (D.C. Cir. 2007).  If the requestor can meet this burden, the government must provide the information unless it can show that it has been subsequently destroyed or placed under seal. *Cottone*, 193 F.3d at 556. The VA refers to the information in this case as having been released "erroneously" to Ancestry in 2011. *Defendant's Memorandum of Law*, Docket Entry 25 (hereinafter "*Def's Mem.*") at 19. Yet the defendant has placed no information before this court showing that the records were subsequently placed under seal. Nor has the defendant placed information before this court showing that, save for the data of 5,223 living veterans identified in 2011, they have

5

attempted to claw back the relevant information from Ancestry. The agency therefore must produce the requested information.

### ii. Exemption 6 does not apply where the public interest in disclosing the information outweighs the privacy interest at stake.

The public interest in disclosing the information contained in the BIRLS Death File—including for the years subsequent to 2010—is outweighed by the privacy interest of the individuals whose information appears therein. Exemption 6 allows the VA to withhold "personnel and medical files and similar files the disclosure of which would constitute a *clearly unwarranted* invasion of personal privacy." 5 U.S.C. § 552(b)(6) (emphasis added). "Exemption 6 is intended to protect individuals from the injury and embarrassment that can result from the unnecessary disclosure of personal information." *Cook v. Nat'l Archives & Records Admin.*, 921 F. Supp. 2d 148, 154 (S.D.N.Y. 2013) (quoting *Wood v. FBI*, 432 F.3d 78, 86 (2d Cir. 2005) (citing *U.S. Dep't of State v. Washington Post Co.*, 456 U.S. 595, 599, 102 S. Ct. 1957, 72 L. Ed. 2d 358 (1982))).

In order to determine whether an agency has appropriately asserted Exemption 6 to protect requested information from disclosure, the Courts balances the public's interest in disclosure against the individuals' privacy interests. *Wood*, 432 F.3d at 87. The agency seeking to withhold the information bears the burden of demonstrating a substantial privacy interest. *Cook*, 921 F. Supp. 2d at 156 (quoting *Sims v. Central Intelligence Agency*, 642 F.2d 562, 573, 206 U.S. App. D.C. 157 (D.C. Cir. 1980)). The alleged privacy interest "may be diminished where the individual is deceased… the fact of death, therefore, while not requiring the release of information, is a relevant factor to be taken into account in the balancing decision whether to release information." *Schrecker v. U.S. Dept. of Justice*, 349 F.3d 657, 661 (D.C. Cir. 2003) (internal quotation omitted). As this case deals strictly with factual data on deceased persons, this

case is distinct from others that have found that disclosure of a record could implicate the privacy rights of grieving family members. *See, e.g., Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 170 (2004) (recognizing "surviving family members' right to personal privacy with respect to their close relatives' death-scene images").

Here, the Court should find that the public interest in disclosure far outweighs the minimal privacy interests implicated under Exemption 6. The VA has failed to establish its burden of demonstrating a substantial privacy interest. The facts of the case show that except for possibly a handful the individuals contained in the BIRLS Death File are deceased and thus have a diminished privacy interest in the withholding of their information. The data requested does not implicate the privacy rights of surviving family members. Substantial public interest in the disclosure of this information outweighs the minimal privacy rights, indicating Exemption 6 does not apply and the VA must release the BIRLS Death File.

### iii. The privacy interest is minimal because it is highly probable the individuals in question are deceased.

The privacy interest in this case is minimal because it is highly probable that the individuals whose privacy interests are at stake are deceased. The Courts require agencies to make "a reasonable effort to ascertain life status" before performing the calculus for a privacy expectation under Exemption 6. *Schrecker*, 349 F.3d at 662. A reasonable effort does not, however, require that the agency's conclusion regarding an individual's life status be given any deference. A rule is considered reasonable for the purposes of raising Exemption 6 where it "is intended to prevent disclosure of personal information unless it is *highly probable* that the individual in question is dead." *Schrecker*, 349 F.3d at 665. This is reflected in the name of the BIRLS Death File.

7

Even where reasonable efforts are made to ascertain life status, such a rule cannot be reasonable if it presumes an individual is alive when it is "*highly probable* that the individual in question is dead." *Ibid.* The VA is attempting to increase their burden beyond what is required to avoid disclosing the BIRLS Death File as required by FOIA. The VA's standard for establishing life status by cross-referencing the BIRLS Death File against other VA data sources that the agency concedes "may themselves contain inaccuracies" is overly strict and unlikely to produce accurate results. *Def's Mem.* at 7. This standard creates an artificially heightened degree of uncertainty by treating as unreliable such indicators of death as hospital records and obituaries if other data sources do not exist to verify them. *Def's Mem.* at 8. The data on the BIRLS Death File is already an amalgamation of information from multiple sources, such as the VA National Cemetery Administration and the Social Security Administration, and is updated on a monthly basis. Rankin Exh. 8. According to the VA, the error rate in the data released to Ancestry in 2011 was 0.04%, indicating that they had determined that 0.04% of the individuals named on the list were alive at the time of review. Since that time, the error rate will have decreased, as some of those living individuals erroneously included in the BIRLS Death File are now deceased and their death status is therefore accurate. As there is now a higher than 99.96% likelihood that an individual on the 2011 BIRLS Death File is deceased, it is highly probable that any given individual in question in this case is dead.

Furthermore, the defendant failed to put forth a reasonable rule for ascertaining life status in the post-Ancestry data set. The VA reports that 36.6% of the dates of birth listed in the post-Ancestry data were after the date at the time of analysis, and 41% of the dates of birth were within 16 years of the listed dates of death. *Def's Mem.* at 9. However, the VA does not explain why even an obviously incorrect date of birth in the BIRLS Death File affects the likelihood that

any of the individuals on the list are deceased. Defendant therefore unreasonably presumes that the individuals on the BIRLS Death File are alive when it is highly probable that they are deceased. For these reasons, the privacy interest advanced by the VA is minimal and their efforts for the required showing should fail.

    **iv.**    **The public interest in the disclosure of the information outweighs the minimal privacy interest.**

The public interest in the disclosure of the BIRLS Death File outweighs the minimal privacy interest implicated by the release of information pertaining to the deceased veterans. "The only relevant public interest in disclosure… is the extent to which disclosure would serve the core purpose of the FOIA, which is contribut[ing] significantly to public understanding of the operations or activities of the government." *U.S. Dep't of Def. v. Fed. Labor Relations Auth.*, 510 U.S. 487, 495, 114 S. Ct. 1006, 1012 (1994) (quoting *Dep't of Justice v. Reporters Comm. for Freedom of Press*, 489 U.S. 749, 755 (1989)) (internal quotation marks omitted). This does not, however, require that the information "reveal[] something directly about the character of a government agency." *N.Y. Times Co. v. United States Dep't of Homeland Sec.*, 959 F. Supp. 2d 449, 455-56 (S.D.N.Y. 2013).

This Court found that a privacy interest at issue that involves "not releasing in compiled form information that is already public… is significantly diminished compared to those at issue in *Associated Press* (Guantanamo Bay detainees)." *N.Y. Times Co.*, 959 F. Supp. at 455.

The public interest here is multifaceted. The BIRLS Death File provides significant insight into how the government works by providing the public with information about the government's response to a significant number of wars and armed conflicts: WWI, the Korean War, WWII, the Vietnam War, the Gulf War, and the Iraq War, among others. *See Fed. Labor Relations Auth.*, 510 U.S. at 495; *Reporters Comm. For Freedom of Press*, 489 U.S. 749.

9

Information about causes of death can help members of the public better understand how the Veterans Administration works by provided information about how long veterans were eligible for services between being released from service and their deaths. Gender information can help members of the public understand how women have become gradually integrated into the military. Access to the BIRLS Death File will enable members of the public to act as historians and better understand the government's response to armed conflicts from the 19th through 21st century. This greatly outweighs the minimal privacy interests of deceased individuals and their family members, particularly because the BIRLS Death File is already publicly available on the internet.

Defendant argues that "aggregate historical data about veterans, and military participation in historic armed conflicts, are available through numerous existing public sources, including the VA." Def's Mem. at 18. But an agency is not relieved of an obligation to disclose simply because the information is publicly available elsewhere. *See Department of Justice v. Tax Analysts*, 492 U.S. 136, 150-53, 109 S. Ct. 2841, 2851 (1989). Additionally, the two cases cited to by defendant to demonstrate instances in which a Court found that privacy interests outweigh the public interest in disclosure both concern the personal information of living individuals. *See Talbot v. United States Dep't of State*, 315 F. Supp. 3D 355 (D.D.C. 2018) (finding insufficient public interest in releasing the names, places of birth, and dates of birth of the living minor children of a Central Intelligence Agency agent to a private citizen); *Painting and Drywall Work Preserv. Fund, Inc. v. HUD*, 936 F.2d 1300, 1303 (D.C. Cir. 1991) (finding that the disclosure of living construction workers' payroll information "is not what the framers of the FOIA had in mind."). These cases do not apply in the instant case as it is highly probable that any given individual in the BIRLS Death File is deceased.

The public also has an interest in scrutinizing the quality of the VA's record-keeping in regards to the BIRLS Death File. The VA states that its records are so poorly kept that "about 45 percent of the post-Ancestry.com BIRLS data provided by VBA had some sort of error apparent from the face of the data." *Def's Mem*. at 9. They argue that these inaccuracies ought to excuse them from providing the requested information. *Def's Mem.* at 19. However, as recently as nine months ago, the VA continues to give presentations to its employees training them to use the BIRLS Death File as a data source for mortality ascertainment. Rankin Exh. 8. In fact, the fact of the records' unreliability is itself of great interest to the public and would "shed[ ] light on [the] agency's performance or its statutory duties." *U.S. Dep't of Justice v. Reporters Comm. for Freedom of Press*, 489 U.S. 749, 773 (1989). One of the primary goals under FOIA is "opening agency action to public scrutiny." *FLRA v. United States Dep't of Veterans Affairs*, 958 F.2d 503, 510 (2d Cir. 1992). The public has a substantial interest in submitting the VA to scrutiny over its maintenance and reliance upon data that the agency itself describes as "error-ridden" and "on its face, deeply flawed." *Def's Mem*. at 2, 15.

v. **The VA's motion for summary judgment motion fails as no FOIA exemption applies**

"Inaccuracy is not a basis for FOIA exemption." *Assembly of Cal. v. United States Dep't of Commerce*, 968 F.2d 916, 923 (9th Cir. 1992). The VA has failed to establish that they are shielded from disclosing the BIRLS Death File under FOIA Exemption 6 and therefore must provide the requested information. The agency attempts to increase the burden of accuracy in making a determination regarding life status above *Schrecker's* standard of "highly probable" in order to support their claim that the file is too inaccurate to release. The VA's poor record-keeping is not a shield to hide behind, but in fact one of the reasons the public has such a heightened interest in viewing the data in this case. FOIA and the case law are clear on this point.

11

Where no exemption applies, as here, the data must be released to the public. The BIRLS Death File for the years 1850-2010 is in the public domain and no exemptions apply to that information already released to the public. The strong public interest in releasing the data—including for the years subsequent to 2010—far outweighs the minimal privacy interests of the individuals on the list, given that it is highly probable that any given individual on the list is deceased. It is plaintiff's view that not having confidence in ones data, does not state a FOIA exemption. If the agency is concerned with the inaccuracies of its data, it may choose to include a disclaimer on the front of its release detailing these concerns. *Petroleum Info. Corp. v. United States Dep't of Interior*, 298 U.S. App. D.C. 125, 976 F.2d 1429, 1437 (1992) ("The Bureau, moreover, does not convincingly explain why its concerns with [the consequences of releasing a report with errors] could not be allayed by conspicuously warning FOIA requesters… that the Bureau disclaims responsibility for any errors or gaps").

## V. Conclusion

Defendant's motion for summary judgment should be denied. The plaintiffs respectfully request that the Court grants its motion for summary judgment. The VA is required by the Public Domain Doctrine to release the BIRLS Death FILE. Exemption 6 does not apply because the public interest in disclosing the information outweighs the privacy interest at stake. The privacy interest implicated in this case is minimal because it is highly probable that the individuals in in the Death FILE are actually dead. The public interest in the disclosure of information outweighs this minimal privacy interest. Defendant's motion for summary judgment fails as no FOIA exemption applies, therefore judgment should be ordered released.

Dated: October 11, 2019
New York, New York

                                              Respectfully submitted,

                                              BELDOCK LEVINE & HOFFMAN, LLP
                                              99 Park Avenue, PH/26th Floor
                                              New York, New York 10016
                                              *Attorneys for Plaintiff*

                                    By:_____
                                              David B. Rankin
                                              Katherine Adams (law graduate)
                                              t: 212-277-5825
                                              e: drankin@blhny.com