UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

RECLAIM THE RECORDS and BROOKE
SCHREIER GANZ,

                        Plaintiffs,

                        -v-

UNITED STATES DEPARTMENT OF
VETERANS AFFAIRS, including its Components,
the Office of General Counsel, the Veterans
Benefits Administration, and the Veterans Health
Administration,

                        Defendant.

18 Civ. 8449 (PAE)

---

**DEFENDANT'S REPLY MEMORANDUM OF LAW IN SUPPORT OF
ITS MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT**

 

GEOFFREY S. BERMAN
United States Attorney
Southern District of New York
86 Chambers Street, Third Floor
New York, New York 10007
Telephone: (212) 637-2725
Facsimile: (212) 637-2702

CHARLES S. JACOB
Assistant United States Attorney
   – Of Counsel –

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT .................................................................................................. 1

ARGUMENT .................................................................................................................................. 2

    I.    The Veterans' Privacy Interests At Issue Are Significant ................................................... 2

    II.   The Privacy Interests At Issue Outweigh Any Public Interest in Disclosure ..................... 6

    III.  The Public Domain Doctrine Does Not Compel The Release Of The Withheld BIRLS Data .................................................................................................................................... 8

CONCLUSION ............................................................................................................................. 10

## TABLE OF AUTHORITIES

**Cases**

*Abdelfattah v. U.S. Dep't of Homeland Sec.*,
  488 F.3d 178 (3d Cir. 2007) .................................................................................................. 3

*Consumers' Checkbook Ctr. for the Study of Servs. v. U.S. Dep't of Health & Human Servs.*,
  554 F.3d 1046 (D.C. Cir. 2009) ............................................................................................ 8

*Cottone v. Reno*,
  193 F.3d 550 (D.C. Cir. 1999) .............................................................................................. 9

*Davin v. U.S. Dep't of Justice*,
  60 F.3d 1043 (3d Cir. 1995) .................................................................................................. 3

*Department of Justice v. Tax Analysts*,
  492 U.S. 136 (1989) .............................................................................................................. 6

*Halpern v. F.B.I.*,
  181 F.3d 279 (2d Cir. 1999) .................................................................................................. 8

*Johnson v. Executive Office for United States Attorneys*,
  310 F.3d 771 (D.C. Cir. 2002) ......................................................................................... 3, 4

*Nat'l Ass'n of Retired Fed. Employees v. Horner*,
  879 F.2d 873 (D.C. Cir. 1989) .............................................................................................. 7

*New York Times Co. v. U.S. Dep't of Homeland Sec.*,
  959 F. Supp. 2d 449 (S.D.N.Y. 2013) ................................................................................... 9

*Peltier v. F.B.I.*,
  No. 03-cv-905, 2005 WL 735964 (W.D.N.Y. Mar. 31, 2005) .............................................. 8

*Rad v. United States Attorney's Office*,
  No. 15-cv-2415, 2017 WL 436260 (D.N.J. Jan. 31, 2017) ............................................... 2, 3

*Schrecker v. U.S. Dept. of Justice*,
  349 F.3d 657 (D.C. Cir. 2003) ..................................................................................... 2, 3, 4, 5

*U.S. Dep't of Def. Dep't of Military Affairs v. FLRA*,
  964 F.2d 26 (D.C. Cir. 1992) ................................................................................................ 7

*U.S. Dep't of Def. v. Fed. Labor Relations Auth.*,
  510 U.S. 487 (1994) .................................................................................................................. 8

*U.S. Dep't of Justice v. Landano*,
  508 U.S. 165 (1993) .................................................................................................................. 4

*U.S. Dep't of State v. Washington Post Co.,*
  456 U.S. 595 (1982) .................................................................................................................. 2

*Wolf v. C.I.A.*,
  473 F.3d 370 (D.C. Cir. 2007) .................................................................................................. 9

**PRELIMINARY STATEMENT**

Plaintiffs do not dispute that, in 2011, thousands of living veterans had their personal data—including social security numbers—exposed to the public because of a release of a database by the Department of Veterans Affairs to Ancestry.com. The VA has recognized that it erred in that disclosure and undertaken significant remedial efforts. But Plaintiffs now ask that this Court require the VA to compound that mistake and release the same and more recent Beneficial Identification and Records Locator Subsystem ("BIRLS") data, despite recent comparative analyses that reveal a significant risk that any new release will likewise cause many living veterans' social security numbers and military service information to be exposed to anyone with a web browser. Given the VA's recent analyses and the risks they revealed, the VA correctly invoked Exemption 6 for any individual whose death status in the BIRLS data was either unclear or incorrect.

Plaintiffs' arguments to the contrary are unfounded. For example, Plaintiffs assert that, in withholding the data, the VA must demonstrate a substantial possibility that any given individual in this database is alive. Not so. Even the authority cited by Plaintiffs reveals that an invocation of Exemption 6 is proper if the VA made a reasonable effort to ascertain life status. Here, Plaintiffs do not identify any potential alternative comparative verification processes beyond the complex cross-database analyses used by the VA. Likewise, Plaintiffs' back-of-a-napkin statistical analysis does not account for the known uncertainties revealed by those VA comparisons. Further, the public interests asserted by Plaintiffs—insight into the government's participation in armed conflicts and the VA's data keeping—are at best, minimal. For example, Plaintiffs do not dispute that relevant aggregate data is already made publicly available by the VA. Thus, the privacy interests at stake significantly outweigh any public interests.

Plaintiffs' invocation of the public domain doctrine likewise does not compel any different result. The VA cannot waive a third-party's confidentiality rights through a mistaken release. Any other result would improperly hinge individuals' privacy interests on the fallibility of others. That is not what the framers of FOIA had in mind when protecting "individuals from the injury and embarrassment that can result from the unnecessary disclosure of personal information." *U.S. Dep't of State v. Washington Post Co.,* 456 U.S. 595, 599 (1982).

For these reasons, and those stated in the VA's opening brief (Dkt. No. 25), the Court should grant summary judgment to the VA and deny Plaintiffs' motion for summary judgment.

## ARGUMENT

### I. The Veterans' Privacy Interests At Issue Are Significant

Plaintiffs do not dispute that the information they seek—social security numbers, gender, birth and death dates, and information about military service specific to individual veterans—are well within the ambit of FOIA's Exemption 6. Instead, Plaintiffs claim that the veterans' privacy interests are diminished because, according to Plaintiffs, there is a very low likelihood that the veterans identified in the BIRLS data are alive. In doing so, Plaintiffs misstate the framework used by courts when an individual's life status cannot be confirmed merely by examining the requested data. Specifically, Plaintiffs claim that the "government has failed to meet its burden of proving that there is a substantial probability that any given individual on the BIRLS Death File is alive." Pls. Br. at 4. That is not the burden. As explained by the D.C. Circuit case relied on by Plaintiffs, a court must evaluate whether the "Government has made a reasonable effort to ascertain life status." *Schrecker v. U.S. Dept. of Justice*, 349 F.3d 657, 662 (D.C. Cir. 2003); s*ee also Rad v. United States Attorney's Office*, No. 15-cv-2415, 2017 WL 436260, at *4 (D.N.J. Jan. 31, 2017) (rejecting argument that the FBI wrongfully invoked Exemption 6 because the

2

FBI "had not shown that the individuals in these records are still alive."). Under that standard, the "reviewing court therefore should not focus primarily on the agency's rate of success in unearthing the information sought." *Schrecker*, 349 F.3d at 662; *see also Johnson v. Executive Office for United States Attorneys*, 310 F.3d 771, 776 (D.C. Cir.2002) (finding that the government met its burden despite its failure to determine whether the individuals in question were alive or dead); *Rad,* 2017 WL 436260, at *4 (declining to "require the relevant agencies to affirmatively demonstrate the life status of the individuals involved"). The "proper inquiry is whether the Government has made reasonable use of the information readily available to it, and whether there exist reasonable alternative methods that the Government failed to employ." *Schrecker*, 349 F.3d at 662.[1]

Instead of acknowledging this standard, Plaintiffs selectively quote *Schrecker* with misleading results. For example, Plaintiffs assert that "[a] rule is considered reasonable for the purposes of raising Exemption 6 where it 'is intended to prevent disclosure of personal information unless it is *highly probable* that the individual in question is dead.'" Pls. Br. at 7 (quoting *Schrecker*, 349 F.3d at 665). But Plaintiffs omit the beginning of that quoted sentence and the preceding one, which demonstrate that the D.C. Circuit was merely describing the specific purpose of a methodology appropriately used by the Government in that case given the specific facts, not the standard by which the Government's efforts will be judged by courts. *See Schrecker*, 349 F.3d at 665. ("We find that the Government's use of 100 years as the basis for the rule nonetheless is reasonable. This baseline is intended to prevent disclosure of personal

---

[1] The Third Circuit has similarly held that "it is within the discretion of the district court to require an agency to demonstrate that the individuals upon whose behalf it claims the privacy exemption are, in fact, alive." *Davin v. U.S. Dep't of Justice*, 60 F.3d 1043, 1059 (3d Cir. 1995) (stating that, among other factors, the district court should consider the number of records that must be searched) *holding modified in other parts by Abdelfattah v. U.S. Dep't of Homeland Sec.*, 488 F.3d 178 (3d Cir. 2007). Here, given the nature of the VA data and the massive number of records, the Court should not require any affirmative demonstration by the agency that all of the veterans in the 14-million person database are alive.

3

information unless it is highly probable that the individual in question is dead."). Indeed, in *Schrecker*, the D.C. Circuit held that the government's efforts were reasonable, despite finding that it "may be more likely than not that any given individual named in these records is dead." *Schrecker*, 349 F.3d at 665.

Further, Plaintiff's proposed standard—that the VA be required to "prove" a "substantial probability" that veterans identified in the BIRLS data are alive—undermines the principles from which the "reasonable effort" rule springs. For example, the Supreme Court has cautioned that "Congress' intent [was] to provide workable rules' of FOIA disclosure." *U.S. Dep't of Justice v. Landano*, 508 U.S. 165, 180 (1993). Further, FOIA requires "systemic and case-specific exercises of discretion and administrative judgment and expertise," and is thus "hardly an area in which the courts should attempt to micro manage the executive branch." *Johnson,* 310 F.3d at 776. Plaintiffs' proposed standard would upend these doctrines by ignoring workability and the VA's administrative expertise.

Thus, contrary to Plaintiffs' arguments, and as explained in detail in the VA's opening brief and supporting declarations, the VA used reasonable available methods in attempting to ascertain life status. *See* Dkt. No. 25, Def. Br. at 6-10. Indeed, those efforts included numerous complex analyses and resulted in the release of requested information to Plaintiffs for over 5 million veterans. *See id.* at 14. Nowhere do Plaintiffs suggest that the Government failed to employ alternative reasonable methods that were available. *See Schrecker*, 349 F.3d at 662-66 (affirming that the Government's methods for attempting to determine life status were adequate because alternative methods proposed by the plaintiff lacked merit).[2]

---

[2] Plaintiffs also suggest that because life status is a "disputed fact," inferences on that issue must be drawn in favor of Plaintiffs because they are the "nonmoving party." Pl. Opp at 4. But even ignoring that Plaintiffs have themselves cross-moved for summary judgment, the results of the VA's comparative analyses are undisputed.

Plaintiffs' misguided statistical interpretations of data included in VA employee declarations likewise does not alter the analysis. For example, Plaintiffs assert that "there is now a higher than 99.96% likelihood that an individual on the 2011 BIRLS Death File is deceased." Pls. Br. at 8. But that supposed likelihood was calculated by reverse-engineering the .04% of total veterans that the VA concluded, in 2011, were definitively alive and part of the Ancestry.com release. *See id.* This extrapolation, however, does not account for the known uncertainties in the data revealed by the VA's more recent undisputed analyses. For example, as a result of these post-complaint analyses, the VA determined that 22,483 veterans in the BIRLS data were identified by NDS with an indicator that they were alive in the December 2018 VHA Vital Status Master File, which is a file that contains data for veterans who either applied for health care eligibility or received health care from VA. *See* Quinn Decl. ¶¶ 16-17. It is also undisputed that approximately 965,000 individuals in the BIRLS data could not be matched with information in the Vital Status Master File. *Id.* These and other comparative analyses thus revealed obvious and wade-ranging errors in the data beyond the more narrow inquiry in 2011 analysis. Plaintiffs' percentage calculations, which do not account for these undisputed facts, thus do not accurately reflect the known uncertainties about life status.

In any event, even assuming that Plaintiffs are correct that only approximately .04% of veterans in the withheld BIRLS data are living, that is still thousands of living veterans. Plaintiffs do not, and cannot, argue that such veterans' privacy interests will not be seriously harmed by the release of their personal data.

Further, Plaintiffs' argument that the cross-reference comparisons run by the VA are "unlikely to produce accurate results," Pls. Opp at 8, only further supports the Defendant's position. At its core, the comparative verification process used by the VA identified hundreds of

5

thousands conflicts in data sources relevant to an individual's life status. This process thus revealed a significant risk of disclosure of data for many living individuals, and justified the VA's invocation of Exemption 6. Although Plaintiffs suggest that the BIRLS Death File data may be more reliable than other types of data because it is updated on a monthly basis and includes an amalgamation of information from other sources, Plaintiffs do not point to anything in the record suggesting that these updates remedy any errors in the BIRLS data. Nor do Plaintiffs identify any evidence suggesting the underlying sources of the BIRLS data are more likely to be accurate than the sources underlying the cross-referenced data. Last, although Plaintiffs argue that "obviously incorrect date[s] of birth" do not affect the likelihood that an individual is deceased, Pls. Br. at 8, in actuality, these and other similar errors bear on the VA's assessment of whether, in totality, BIRLS data can be considered reliable and thus, likewise increases the probability that living veterans are included in the data.

For all of these reasons, the privacy interests of veterans are significant in this case.

## II. The Privacy Interests At Issue Outweigh Any Public Interest in Disclosure

Plaintiffs claim that the BIRLS data will provide "significant insight into how the government works by providing the public with information about the government's response to a significant number of wars and armed conflicts." Pls. Br. at 9. But Plaintiffs do not claim that a veteran-by-veteran database of personal information will provide the public with any greater historical understanding of these issues than the publicly available aggregate data identified by the Government in its opening brief. *See* Def. Br. at 18 (discussing alternative aggregate sources of relevant data). Instead, citing the Supreme Court's decision in *Department of Justice v. Tax Analysts*, 492 U.S. 136 (1989), Plaintiffs assert that "an agency is not relieved of an obligation to disclose simply because the information is publicly available elsewhere." Pls. Br. 10. This

argument ignores that public availability can still inform the Court's analysis of the public interest in the information sought. Indeed, *Tax Analysts* did not involve Exemption 6 or privacy interests, and instead addressed whether an agency can withheld records—without invoking an exemption—merely because those records were publicly available. That is not the issue here, where the defendant has invoked a specific exemption requiring a balancing test. *See U.S. Dep't of Def. Dep't of Military Affairs v. FLRA*, 964 F.2d 26, 29-30 (D.C. Cir. 1992) ("*Tax Analysts* stands for the proposition that the existence of an alternative source of information is not a *per se* defense to a request for information under the FOIA. . . [U]nder the law of this circuit consideration of alternative sources of information is indeed one factor that agencies and reviewing courts may legitimately consider in determining whether privacy-implicating information must be disclosed under the FOIA.").

The D.C. Circuit's decision in *Nat'l Ass'n of Retired Fed. Employees v. Horner*, 879 F.2d 873, 879 (D.C. Cir. 1989), is particularly instructive. In that case, the plaintiff sought names and addresses of retired federal employees who had been added to the annuity rolls. As the D.C. Circuit explained, unless the plaintiff could show that the public would "learn something directly about the workings of the Government" through the specific data sought, "their disclosure is not affected with the public interest." *Id.* at 879. While the D.C. Circuit could "see how the percentage of the federal budget devoted to annuities, the amount of the benefit an average annuitant receives, or other aggregate data might be of public interest, disclosure of those facts would not be entailed in (and could be accomplished without) releasing the records [plaintiff] seeks here." So too here, where personal-level data is sought but aggregate data is already publicly available.

Plaintiffs also assert that the public "has an interest in scrutinizing the quality of the VA's record-keeping in regards to the BIRLS Death File." Pl. Opp. at 11. But again, Plaintiffs do not articulate how that interest will be furthered by the disclosure of veterans' private information that will not, on its face, reveal how or why the data is error-ridden. *See Consumers' Checkbook Ctr. for the Study of Servs. v. U.S. Dep't of Health & Human Servs.*, 554 F.3d 1046, 1053 (D.C. Cir. 2009) (holding no furtherance of public interest in part because the plaintiff did "not explain how the requested data can be used to perform [an] analysis"). Further, the VA "is in the process of retiring BIRLS," also diminishing any relevant public interest. Dkt. No. 28 at 6, Declaration of Derek Herbert ¶ 12. In any event, a "very slight privacy interest would suffice to outweigh the relevant public interest." *U.S. Dep't of Def. v. Fed. Labor Relations Auth.*, 510 U.S. 487, 500 (1994), and any potential marginal contribution to the effort to understand VA data keeping is too small to outweigh infringement on veterans' core privacy interests. Thus, the veterans' privacy interests outweigh any potential public interest in this case.

### III. The Public Domain Doctrine Does Not Compel The Release Of The Withheld BIRLS Data

Further, contrary to Plaintiffs' arguments, the VA's prior—and admittedly mistaken—release to Ancestry.com does not waive its ability to withhold the data at issue. Once again, Plaintiffs misstate the relevant standard to be applied. Specifically, Plaintiffs assert that the VA cannot invoke Exemption 6 for any materials previously disclosed and not subsequently destroyed or placed under seal. Pls. Br. at 5. Here, however, the relevant privacy interests belong to veterans, not the government, and a third party's "[c]onfidentiality interests cannot be waived through prior public disclosure or the passage of time." *Halpern v. F.B.I.*, 181 F.3d 279, 297 (2d Cir. 1999); *see also Peltier v. F.B.I.*, No. 03-cv-905, 2005 WL 735964, at *14 (W.D.N.Y. Mar. 31, 2005) (rejecting argument that the publication of information forfeited third-party

8

individuals' privacy interests); Defs. Br. at 18-19 (collecting additional cases). Indeed, the D.C. Circuit cases cited by Plaintiffs, *see* Pl. Br. at 5, did not involve third-party privacy interests or otherwise involved records intentionally introduced in public court proceedings, thus implicating the common-law right to inspect judicial records, an interest not present here. *See Cottone v. Reno*, 193 F.3d 550 (D.C. Cir. 1999) (analyzing Exemption 3 withholdings and remanding asserted Exemption 7(c) withholdings for consideration by the district court); *Wolf v. C.I.A.*, 473 F.3d 370, 375 (D.C. Cir. 2007) (analyzing Exemption 3 withholdings).

Plaintiffs also rely on a 2013 district court decision for their claim that "the privacy interest [in an Exemption 6 claim] . . . is significantly diminished" where the interest is in "not releasing in compiled form information which is already public." Pl. Br. at 5 (citing *New York Times Co. v. U.S. Dep't of Homeland Sec.*, 959 F. Supp. 2d 449 (S.D.N.Y. 2013). But in that case, the district court held that disclosure would in fact implicate a privacy interest, despite the plaintiffs' claim that the relevant information was "routinely disclosed" in public proceedings. *New York Times Co.*, 959 F. Supp. 2d at 453-54. The same is true here, where the relevant disclosure was a mistaken one-time release. Further, although the district court also held in *New York Times Co.* that this privacy interest was "a diminished one" and that public disclosures could diminish or eliminate privacy interests, this Court should not adopt those holdings. First, that case includes no discussion of *Halpern* or other case law addressing who holds the privacy interest. Second, the decision did not involve any alleged or admitted mistakes, and thus articulates no reasoning as to why a third-party's privacy interest should be affected by errors of others.

Thus, Plaintiffs' suggestion that a formal "claw back" request by the VA was necessary is incorrect, because it would hinge third-party's privacy rights on decisionmaking by others.

9

Here, the VA has admitted it erred in making the Ancestry.com release without confirming whether the individuals in that release were actually dead. As Plaintiffs also acknowledge, the VA took significant remedial efforts, including by identifying over 5,000 specific veterans with incorrect death information and through providing one year of credit monitoring to those veterans that the VA could locate. Quinn Decl. ¶ 8. The public doctrine exception therefore does not apply here.[3]

## CONCLUSION

For the foregoing reasons, and for those set forth in the Defendant's memorandum of law in support of its motion for summary judgment and supporting declarations, the Court should grant summary judgment for Defendant and deny Plaintiffs' motion for summary judgment.

Dated: New York, New York
November 1, 2019

>  Respectfully submitted,
>
> GEOFFREY S. BERMAN
> United States Attorney for the
> Southern District of New York
>
> By:   /s/ Charles S. Jacob
> CHARLES S. JACOB
> Assistant United States Attorney
> 86 Chambers Street, Third Floor
> New York, New York 10007
> (212) 637-2725
> charles.jacob@usdoj.gov

---

[3] Plaintiffs also point to a VA slide deck that mentioned the BIRLS data in discussing VA data sources for mortality assessment. *See* Pls. Br. at 11; Dkt. No. 36-8. But that presentation expressly acknowledged "limitations of available VA data sources for mortality assessment," *see* Dkt. No. 36-8 at 2, and discussed the BIRLS data only as part of a larger data set. *See* Dkt. No. 36-8 at 17. Indeed, the presentation disclaimed that even the larger data set should "not be used for business operations regarding individual veterans" and acknowledged "challenges" in the data such as "multiple dates of death" and "[a]ctivity after date of death." *See id.* at 24.